

David McCraw
Vice President and
Assistant General Counsel

620 Eighth Avenue
New York, NY 10018
tel 212.556-4031
fax 212.556-4634
mccraw@nytimes.com

December 31, 2014

VIA ECF

Hon. Sterling Johnson, Jr.
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201
New York, NY 10007

Re:   USA v. Durand (14-cr-247 (SJ)) – Request to Unseal Search Warrant Materials

Dear Judge Johnson:

I write on behalf of The New York Times Company ("The Times") to seek the unsealing of search warrants, search warrant applications, supporting affidavits, court orders, returns on executed warrants, and any related materials (collectively, the "Warrant Material") in the above-referenced action, which has now concluded. If Your Honor prefers, we are prepared to move by formal motion to intervene and seek the unsealing. We make this request under our rights of access to judicial documents grounded in the federal common law and the First Amendment.[1]

A. FACTUAL BACKGROUND

On April 25, 2014, a grand jury returned an indictment against Diana Durand charging her with, *inter alia*, violating campaign finance laws by contributing more than $10,000 to Congressman

---

[1] The right of access is an affirmative, enforceable public right, and the standing of the press to enforce it is well settled. *See, e.g., Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 609, n. 25 (1982); *United States v. Haller*, 837 F.2d 84, 86 (2d Cir. 1988); *In re Herald Co.*, 734 F.2d 93, 101-102 (2d Cir. 1984*); United States v. Brooklier*, 685 F.2d 1162, 1168 (9th Cir. 1982); *United States v. Criden*, 675 F.2d 550, 552 n. 2 (3d Cir. 1982).

Michael Grimm's election campaign in the names of other individuals, in violation of 2 U.S.C. §§ 441f and 437g(d)(1)(D)(i), and lying to federal agents about those contributions, in violation of 18 U.S.C. § 1001(a).

On June 9, 2014, the Government filed a motion requesting leave to file a letter under seal relating to sealed search warrants. The Court also received a Third Party Motion from Michael Grimm in a separate criminal proceeding requesting that the search warrants remain sealed. Journalists covering the Eastern District of New York, including a reporter for The Times, opposed the motions.

On June 26, 2014, the Court granted the Government's motion to seal. In its opinion, the Court concluded:

> The Government represents that the search warrants are evidence in a separate and ongoing criminal investigation that has not yet been charged. In addition, unsealing the information may harm the fair trial rights of the suspect in that case. That matter is not before this Court. However, the obvious danger of impairing law enforcement and judicial efficiency in another case justifies this Court in temporarily sealing the search warrants. The Court takes seriously the presumption of public access. As such, **it is the expectation of this Court that these documents will be readily available upon the conclusion of the Government's investigation in the separate action**.

Docket No. 28 at 4 (emphasis added).

Subsequently, Ms. Durand pleaded guilty to making campaign contributions in the names of others. *See* Docket Entry for Sept. 3, 2014.

On December 23, 2014, Michael Grimm, the defendant in the other criminal investigation referenced by the Court in its June 26, 2014 ruling, pleaded guilty to tax fraud. *See United States v. Michael Grimm*, 14-cr-248 (PKC) (RML) (E.D.N.Y. 2014) at Docket No. 81.

**B. ARGUMENT**

Both as a matter of federal common law and under the First Amendment, the public has a right to judicial records, including search warrant materials. Where, as here, the underlying criminal investigations using those search warrant materials have concluded, those materials should be unsealed.

A. *There is a Common Law Right of Access to Search Warrant Materials*

The Second Circuit Court of Appeals has long held that a common law right of access attaches to search warrant materials used in judicial proceedings, just as is to does to other judicial records. *See In re Application of Newsday, Inc.* 895 F.2d 74, 79 (2d Cir. 1990) (granting a right of access to search warrant materials under federal common law at the conclusion of an investigation and plea bargain). As a result, search warrant materials are presumptively public, and the burden falls on the parties seeking to seal them to overcome the presumption of access. *Newsday*, 895

F.2d at 77-79; *see also United States v. Bus. Of the Custer Battlefield Museum*, 658 F.3d 1188, 1192 (9th Cir. 2011) ("[A]s the government concedes, the common law right of access applies [to warrant materials]"); *United States v. All Funds on Deposit at Wells Fargo Bank*, 643 F.Supp.2d 577, 582 (S.D.N.Y. 2009) (finding common law presumption of access attaches to seizure warrant affidavits).

The common law right of access to search warrants and their related materials is reflected in Rule 41(i) of the Federal Rules of Criminal Procedure, which requires that all papers prepared in connection with a search warrant to be filed with the clerk of the district in the district in which the subject property was seized. Fed. R. Crim. P. 41(i). These records typically are then available for public inspection because of their undeniable importance to understanding the justification for judicial action. *See Wells Fargo Bank*, 643 F.Supp.2d at 581 ("Search warrant applications clearly form the basis for judicial decision making and generally are unsealed at later stages of criminal proceedings, such as upon the return of the execution of the warrant or in connection with post-indictment discovery."). Indeed, sealing warrants in the first instance is considered "an extraordinary action," one which "should be done only if the government shows a real possibility of harm." *In re Offices & Storage Areas Utilized by Stephen P. Amato, D.C., P.C.*, No. 05-MJ-05-B, 2005 U.S. Dist. LEXIS 6870, at *17-18 (D. Me. Apr. 14, 2005) (quoting 3A Wright, King & Klein, Federal Practice & Procedure, Criminal § 672 (3d ed. 2004)); *see also In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584, 589 (D. Md. 2004) (same).

    a. *The Weight of the Presumption of Access to Search Warrant Material is Especially Strong.*

The strength of the presumption of public access varies depending on the type of document at issue. *See Lugosch v. Pyramid Co.* 435 F.3d 110, 119 (2d Cir. 2006) (discussing the varying weight of the presumption). Documents used to adjudicate litigants' substantive legal rights – conduct at the heart of Article III – are given the strongest presumption of access. *Id.* (citing *United States v. Amodeo ("Amodeo II")*, 71 F.3d 1044, 1049 (2d Cir. N.Y. 1995)). Moving down the continuum towards documents related to "matters that come within a court's purview solely to insure their irrelevance," the weight of the presumption declines. *Id.*

Here, where search warrant materials are at issue, the presumption of access is particularly strong. *See In Re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208 (DRH), 2008 U.S. Dist. LEXIS 107711 (N.D.N.Y. July 14, 2008). In *Sealed Search Warrants*, the district court recognized that the presumption is at its apex – in fact, at its "the maximum possible weight" – for search warrant materials because those documents are used to "adjudicate[] the right of individuals under the Fourth Amendment not to be subjected to government intrusion absent a judicial determination of sufficient cause." *Id.* at *7; *see also Wells Fargo Bank*, 643 F.Supp.2d at 583 ("There can be no doubt that a court's determination that a person's property may be seized involves the adjudication of that person's substantive rights, or that information upon which the court relies in making that determination directly affects the adjudication. The affidavits at issue here contain the information forming the basis for the probable cause determinations that were prerequisites for the issuance of the seizure warrants. The common law presumption of access to the affidavits is therefore entitled to great weight.").

It is through public access that citizens can monitor whether prosecutors are overreaching, whether individual rights are duly protected, and whether the courts are properly balancing the societal needs of law enforcement and individual liberty. Without that access, the public has no way to oversee and assess the courts' exercise of their power to protect individual citizens – hence, the very reason for the strong presumption of access. *See generally United States v. Leon*, 468 U.S. 897, 913-14 (1984) (court's exercise of duties under Fourth Amendment warrant requirement mandates a "detached and neutral" judge who will "not serve merely as a rubber stamp for the police").

> b. *Countervailing Interests Cannot Overcome the Presumption of Access for the Warrant Material Sought in This Case*

Only if "countervailing factors" outweigh the presumption of access should a court continue to keep judicial documents under seal. *Lugosch*, 435 F.3d at 124. The party seeking to restrict access rights bears the burden of justifying any limitation. *See Lugosch*, 435 F.3d at 123-124; *see also United States v. Amodeo ("Amodeo I")*, 44 F.3d 141, 148 (2d Cir. 1995).

Here, the presumption of access for the Warrant Material cannot be overcome by law enforcement concerns or fair-trial considerations, given the conclusion of the criminal matters connected to the warrants. In fact, in its prior ruling, the Court stated that it was "temporarily sealing" the search warrants solely because disclosure could harm the fair trial rights of the individual subject to the separate criminal investigation. *See* Docket No. 28 at 4 (emphasis added). That potential for harm has now been eliminated.

Likewise, any privacy interest in the materials would appear to be negligible or nonexistent. The Second Circuit has said that while a court should not grant public access to judicial records simply to cater to a "morbid craving for that which is sensational or impure" or "to gratify private spite or promote public scandal . . .", it equally should not prevent disclosure without considering the "degree to which the subject matter is traditionally considered private rather than public." *Amodeo II*, 71 F.3d at 1051. Here, the search warrants at issue related to illegal campaign finance activity – hardly the sort of issue that would raise the kind of personal privacy issues with which courts are concerned. Further, most or all of the illegal activity that underpinned the search warrants has now become public knowledge through the prosecutions. "[A] party that opposes access to sealed material can have no legitimate privacy interest in matters that are no longer private." *In re Search Warrant*, No. M-3-94-80, 1994 U.S. Dist. LEXIS 18360, at *29 (D. Ohio June 7, 1994); *see also In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. N.Y. 1987) (noting that the extent of public knowledge of sealed material factors into a court's decision to grant access).

B. *There is a First Amendment Right of Access to Search Warrants*

In addition to common law right of access, a First Amendment right of access also applies to the Warrant Material.

4

#58462v3

It is now beyond dispute that a First Amendment right of access attaches to a large array of judicial records and gives the public a constitutional right to inspect those judicial records, absent a showing of an overriding public interest that justifies sealing. *See, e.g., Lugosch*, 435 F.3d at 124 (common law and constitutional right to judicial documents in civil case); *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 92-93 (2d Cir. 2004) (unsealing of court dockets under the First Amendment); *United States v. Suarez*, 880 F.2d 626, 630 (2d Cir. 1989) (First Amendment right to documents in a criminal case).

The Supreme Court has developed a two-part test – experience and logic – for determining whether the First Amendment right attaches to particular documents. *See Press-Enterprise Co. v. Superior Court of California ("Press-Enterprise II")*, 478 U.S. 1, 8 (1986); *see also Pellegrino*, 380 F.3d at 92. Under the experience prong, the court considers whether the document has historically been open to the press and the public. *Press-Enterprise II*, 478 U.S. at 8. The logic prong concerns "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8.

The Second Circuit has not decided whether a First Amendment right of access applies to search warrant materials. *Newsday*, 895 F.2d at 78. However, because search warrant materials have historically been open under the Federal Rules of Criminal Procedure upon their filing with the clerk and because disclosure of such materials helps the public monitor whether the extraordinary government power to infringe on a person's privacy is being exercised appropriately, the argument for attachment of the First Amendment right is compelling, especially in cases where an investigation has concluded. *See In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 596, 573 (8th Cir. 1988) (finding a First Amendment right of access to documents filed in support of search warrant applications, even prior to return of an indictment and while investigation is ongoing, because of the importance of such papers to the public's understanding and appreciation of criminal justice processes); *United States v. Loughner*, 769 F.Supp.2d 1188, 1193 (D. Ariz. 2011) (finding a First Amendment right of access to search warrant documents at the "post-investigation, post-indictment" stage of a criminal proceeding); *In the Matter of the Application of The New York Times Company For Access to Certain Sealed Court Records*, 585 F.Supp.2d 83 (D.D.C. 2008) (holding that access to sealed search warrants, warrant applications and supporting materials should be granted under the First Amendment).

Where the First Amendment right of access applies, it can be "overcome only by an overriding interest based on finding that [sealing] is essential to preserve higher values and is narrowly tailored to serve the interest." *Press-Enterprise Co. v. Superior Court of California ("Press-Enterprise I")*, 464 U.S. 501, 510 (1984). *See also Lugosch*, 435 F.3d at 124 (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). The burden of making that showing rests with the party seeking or protecting a sealing order, and it is a heavier burden than the one imposed at common law. *Lugosch*, 435 F.3d at 126. Before sealing records, the court must make "specific, on-the-record findings" that the sealing meets the *Press-Enterprise* standard. *Lugosch*, 435 F.3d at 124.

Because the countervailing interests identified above – law enforcement needs, assurances of a fair trial, privacy – are insufficient to overcome the common-law presumption of access, they

plainly are insufficient to meet the higher test imposed for sealing by the First Amendment under the *Press-Enterprise* line of cases.

## C. CONCLUSION

For all of the foregoing reasons, we respectfully request that the Warrant Material be made public, or, alternatively, that the parties be required to demonstrate why the records should remain under seal. If the parties make such an application, we ask for the right to reply and otherwise be heard.

We thank the Court for its consideration of this matter.

Respectfully submitted,

David E. McCraw

cc: Stuart Kaplan, Esq. (via ECF)
 Joseph Sconzo, Esq. (via ECF)
 Anthony M. Capozzolo, Esq. (via ECF)
 Marisa M. Seifan, Esq. (via ECF)
 Robert L. Capers, Esq. (via ECF)
 Daniel L. Rashbaum, Esq. (via Email)